UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JANE DOE[1], | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 25-cv-11407 |
| | ) | |
| v. | ) | |
| | ) | |
| PLANNED PARENTHOOD OF ILLINOIS, | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |

**COMPLAINT**

NOW COMES Plaintiff, JANE DOE, by and through her counsel, Jeffrey Law Office, LLC, and complains of Defendant, PLANNED PARENTHOOD OF ILLINOIS, and states as follows:

**JURY DEMAND**

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all triable issues.

**JURISDICTION & VENUE**

1. This action is brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, et. Seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., and 28 U.S.C. § 1331.

2. Venue is proper in this Court under 28 U.S.C. § 1391, as Defendant resides in this District, all of the events or omissions giving rise to these claims occurred in this District, and Plaintiff was harmed by Defendant in this District.

---

[1] Plaintiff's Motion to Proceed Under Pseudonym is attached hereto as Exhibit A.

1

## PARTIES

3. Plaintiff, JANE DOE ("Plaintiff"), was at all times relevant to this suit an female adult of American origin and Black ancestry, residing in Chicago, Illinois. Plaintiff harmed by Defendant in this District.

4. Defendant, PLANNED PARENTHOOD OF ILLINOIS ("Defendant"), is duly organized and doing business in Illinois, located at 17 North State Street, Chicago, Illinois 60602. It has obligations as an indemnitor of conduct of its employees and officers under at least 745 ILCS 10/2-301, *et seq.* and 745 ILCS 10/9-101, *et seq*. Defendant harmed Plaintiff in this District. Defendant employs at least 15 full-time employees and therefore is a covered employer under Title VII and ADEA.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. On or about October 2, 2024, Plaintiff timely filed Charges of Discrimination alleging race, national origin, sex and age discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 440-2024-07443 against Defendant.

6. On June 23, 2025, Plaintiff received the EEOC's Notices of Right to Sue.

7. Therefore, Plaintiff's Complaint was filed in a timely manner; and Plaintiff has fully complied with all prerequisites to jurisdiction in this Court.

## UNDERLYING FACTS COMMON TO ALL COUNTS

8. Plaintiff is a Black, American, heterosexual woman over the age of 40 with more than 15 years of experience in talent acquisition, organizational leadership, organizational culture, and diversity, equity, and inclusion (DEI). She has over 12 years of leadership experience, leading

and developing teams, managing large-scale talent acquisition functions, building recruitment infrastructure, and driving organizational change.

9. Plaintiff holds a Doctorate and master's degree in industrial-Organizational Psychology and has completed all coursework toward a Master of Jurisprudence except for the thesis. She also holds multiple professional certifications, including GPHR, PHR, SHRM-SCP, MBTI Certification, and a Diversity Certificate from Cornell University.

10. In January – February 2022, another woman employee (White, under 40) was redirected by leadership to a higher-paying Manager role ($75,000) and later departed in April.

11. Plaintiff interviewed for the position in July 2022 and began employment on August 7, 2022. At the time of her interview, she was ABD ("all but dissertation") and subsequently earned her doctorate in July 2023. The company sought to centralize and build out its recruitment function, hiring Plaintiff for a leadership role expected to lead this critical initiative.

12. Plaintiff requested equitable pay and a "Regional" title but was offered $65,000—$10,000 less than her predecessor and denied the Senior Manager title.

13. Thus, during a scheduled phone call specifically to discuss compensation, Plaintiff requested the call with the Senior Director of Human Resources, a Latina under 40 and an LGBTQIA+ ally, because she believed the initial offer was not in line with the responsibilities and seniority of the role, given her extensive experience and qualifications. Although the position included a standard $5,000 retention bonus offered to all new members of the recruitment department due to difficulties in hiring this bonus did not meaningfully offset the disparity in her base salary. Plaintiff requested a higher salary and a more senior title, such as "Regional Director." The Senior Director declined Plaintiff's request, explaining that the title could cause confusion

because Regional Health Center Directors already existed, but indicated she would "work on the matter going forward."

14. Despite her concerns, Plaintiff accepted the offer because the role aligned with her need not to travel out of town while recovering from the loss of a significant member of her nuclear family and completing her doctoral dissertation.

15. On August 7, 2022, Plaintiff began employment as Manager, Recruitment and Retention, immediately coaching a White junior recruiter who had competed for her job.

16. Subsequently, however, Plaintiff discovered several compensation and promotion disparities compared to four similarly situated employees:

    a. Predecessor (hired February 2022): A white woman under 40 with substantially less experience, holding only a bachelor's degree, with PHR training, and holding a Senior Manager title instead of Manager. She was paid $10,000 more in base salary for the same position.

    b. HR Manager/Director (hired January 2022): A white man under 40 and part of the LGBTQIA+ community, with only a bachelor's degree, significantly less professional HR experience, and no prior leadership experience, promoted to HR director with a six-figure salary. He had no HR certifications, required training on the most critical HR functions, including employee relations, provided by an external HR consultant, received ongoing training from the Senior Director of Human Resources, and was mentored by the Chief People, Equity, and Culture Officer.

    c. HR Specialist/Manager (hired April 2022): A white individual under 40 and part of the LGBTQIA+ community, who reported to Plaintiff approximately

4

        50% of the time, promoted to HR manager despite having no HR certifications, lacking a bachelor's degree, and possessing only minimal, transactional HR experience. This individual required significant on-the-job training in employee relations.

    d.  Director of Organizational Development (hired April 2023): A Black woman under 40 with a PhD in organizational development and no HR certifications, who is also a member of the LGBTQIA+ community, hired at $107,000 despite significantly less experience in her field compared to Plaintiff.

17.    In addition, the Director of Equity and Culture (under 40) was hired at a higher level, but with less experience than Plaintiff.

18.    Further, Plaintiff requested diversity training because it was part of her role as well as her team, to build diversity pipelines and cultural competence, but Plaintiff's request was denied.

19.    In June or July 2023, a younger HR Manager (under 40, with no certification) was promoted to HR Director over Plaintiff, then issued Plaintiff an unduly low performance review, which Plaintiff dissented and refused to sign.

20.    At that time, Defendant began creating a hostile work environment targeted at Plaintiff.

21.    Thus, in or about October – December 2023, multiple complaints surfaced about the junior recruiter under Plaintiff's supervision; Plaintiff implemented a coaching plan, but tensions rose.

22.    In or about December 2023 – January 2024, the recruiter failed to respond to communications for an entire day. Soon after, Plaintiff gave constructive feedback.

23. In Jan 2024, without informing Plaintiff, leadership launched a bullying investigation based on the recruiter's complaint. Meetings were held with Plaintiff's staff under misleading titles such as "Touch Base" and "Check-In," failing to notify Plaintiff she was the subject of the investigation.

24. Then, on February 28, 2024, during a cross-functional meeting, the Director of Equity & Culture admitted suppressing racial complaints at leadership's request, yet continued to co-lead Plaintiff's investigation—creating a conflict of interest.

25. On March 18, 2024, Plaintiff was first told she was under investigation during a meeting titled "Discussion Ongoing Investigation." Leadership offered only a hotline and no follow-up support. Plaintiff requested mediation repeatedly between March and May, but to no avail. Her request was only met with retaliation, discipline, and ultimately termination.

26. Senior Director of Human Resources offered no support, no follow-up, clearly demonstrating discriminatory animus. Thus, she provided full support for the white woman, Recruiter (under 40) who she wanted coached and developed from the onset of hiring.

27. This created a discriminatory and hostile work environment supporting the notion that Plaintiff's experience did not matter; that Plaintiff was being isolated due to her protected class.

28. This was reflected in the findings of the "investigation."

29. Thus, on April 8, 2024, findings minimized the recruiter's complaint as "unintentional bullying." Plaintiff dissented and again requested mediation.

30. On April 24–26, 2024, Plaintiff raised concerns about marginalization and underpayment. Leadership dismissed her concerns, called her "pressed," and issued insubordination write-ups.

31. On May 10, 2024, Plaintiff received a double write-up from both the Chief People Officer and Senior Director, and mediation was formally denied.

32. In late May–Jun 2024, continuing the harassment and hostile treatment, Leadership launched a VPN investigation alleging Plaintiff's absence for 30 days without interviewing her or her staff, and ignoring evidence of her remote work.

33. Then, on June 7, 2024, in retaliatory and discriminatory fashion, Plaintiff was terminated without due process. When she inquired about unemployment, leadership deflected responsibility, continuing its retaliation and defamation following her wrongful termination.

34. In August 2024, Defendant contested Plaintiff's unemployment benefits, attending hearings with counsel to block her claim.

35. Then, in June–September 2024, HR leadership disparaged Plaintiff to former staff until asked to stop, harming Plaintiff's reputation.

36. Nevertheless, on January 17, 2025, Plaintiff ultimately prevailed on appeal and was awarded unemployment benefits.

37. Because of Plaintiff's race, national origin, sex (sexual orientation), and age, Plaintiff was subjected to disparate treatment and discrimination, including being undercompensated in comparison to her less experienced comparators.

**COUNT I – RACE DISCRIMINATION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, et. Seq**

38. Plaintiff realleges and incorporates by reference and all facts and allegations in all other paragraphs of Plaintiff's Complaint as if fully set forth herein.

39. Plaintiff, being Black, is a member of a protected class.

40. Plaintiff was qualified to perform the job duties and responsibilities within Defendant's legitimate expectations.

7

41. Plaintiff apprised Defendant of her race, Black.

42. Defendant discriminated against Plaintiff because of her race by refusing to accommodate her desire of a safe and free non-discriminatory hiring process and for discriminating against her for the same and would not have done so had Plaintiff not been Black and everything else having been the same.

43. Other White job candidates subjected to the same hiring policies, procedures, and guidelines as Plaintiff were not discriminated against as Defendant accommodated those candidates' safe and free non-discriminatory hiring process and workplace rights. This unlawful discrimination directly impacted Plaintiff's terms and conditions of employment with Defendant.

44. Plaintiff's race was a substantial and motivating factor in Defendant's decision to discriminate against Plaintiff. Defendant would not have discriminated against Plaintiff absent consideration of Plaintiff's race.

45. Defendant's discrimination constitutes unlawful discrimination in direct violation of Title VII.

WHEREFORE, Plaintiff, JANE DOE, respectfully requests that this Court enter judgment in her favor and against Defendant as follows:

A. Declare, decree, and adjudge that Defendant violated Title VII;

B. Grant an injunction against Defendant from violating Title VII and to protect other job candidates from such violations;

C. Enter appropriate injunctive relief awarding the Plaintiff the front pay, wages, employee benefits, and other compensation that she was denied or lost;

D. Order Defendant to pay the Plaintiff compensatory damages;

E.     Award the Plaintiff pre-judgment and post-judgment interest to which she is entitled;

F.     Award the Plaintiff her reasonable attorney's fees and costs; and

G.     Award such other and further relief as it is just and appropriate, including nominal damages.

## COUNT II – NATIONAL ORIGIN DISCRIMINATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, et. Seq

46.     Plaintiff realleges and incorporates by reference and all facts and allegations in all other paragraphs of Plaintiff's Complaint as if fully set forth herein.

47.     Plaintiff, of American descent, is a member of a protected class.

48.     Plaintiff was qualified to perform the job duties and responsibilities within Defendant's legitimate expectations.

49.     Plaintiff apprised Defendant of her national origin, American.

50.     Defendant discriminated against Plaintiff because of her national origin by refusing to accommodate her desire of a safe and free non-discriminatory hiring process and discriminating against her for the same, and would not have done so had Plaintiff not been American and everything else having been the same.

51.     Other White job candidates subjected to the same hiring policies, procedures, and guidelines as Plaintiff were not discriminated against as Defendant accommodated those employees' safe and free non-discriminatory workplace rights. This unlawful discrimination directly impacted Plaintiff's terms and conditions of employment with Defendant.

52.     Plaintiff's national origin was a substantial and motivating factor in Defendant's decision to discriminate against Plaintiff. Defendant would not have discriminated against Plaintiff absent consideration of Plaintiff's national origin.

53. Defendant's discrimination constitutes unlawful discrimination in direct violation of Title VII.

WHEREFORE, Plaintiff, JANE DOE, respectfully requests that this Court enter judgment in her favor and against Defendant as follows:

    A.    Declare, decree, and adjudge that Defendant violated Title VII;

    B.    Grant an injunction against Defendant from violating Title VII and to protect other job candidates from such violations;

    C.    Enter appropriate injunctive relief awarding the Plaintiff the front pay, wages, employee benefits, and other compensation that she was denied or lost;

    D.    Order Defendant to pay the Plaintiff compensatory damages;

    E.    Award the Plaintiff pre-judgment and post-judgment interest to which she is entitled;

    F.    Award the Plaintiff her reasonable attorney's fees and costs; and

    G.    Award such other and further relief as it is just and appropriate, including nominal damages.

### COUNT III – SEX DISCRIMINATION / SEXUAL ORIENTATION
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, et. Seq

54. Plaintiff realleges and incorporates by reference and all facts and allegations in all other paragraphs of Plaintiff's Complaint as if fully set forth herein.

55. Plaintiff was qualified to perform her job and satisfactorily performed her duties and responsibilities within Defendant's legitimate expectations.

56. Defendant discriminated against Plaintiff by refusing to accommodate her desire of a safe and free non-discriminatory work place and for discriminating against her because of her sex (female) and sexual orientation, creating a hostile work environment, in violation of Title VII.

57. Defendant's sex/sexual orientation discrimination constitutes unlawful discrimination in direct violation of Title VII.

WHEREFORE, Plaintiff, JANE DOE, respectfully requests that this Court enter judgment in her favor and against Defendant as follows:

A. Declare, decree, and adjudge that Defendant violated Title VII;

B. Grant an injunction against Defendant from violating Title VII and to protect other employees from such violations;

C. Enter appropriate injunctive relief awarding the Plaintiff the back pay, front pay, wages, employee benefits, and other compensation that she was denied or lost;

D. Order Defendant to pay the Plaintiff compensatory damages;

E. Award the Plaintiff pre-judgment and post-judgment interest to which she is entitled;

F. Award the Plaintiff her reasonable attorney's fees and costs; and

G. Award such other and further relief as it is just and appropriate, including nominal damages.

### COUNT IV — AGE DISCRIMINATION
### AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. § 621, et. seq.

58. Plaintiff incorporates by reference and restates herein by express reference all other paragraphs of this Complaint.

59. Plaintiff is over forty (40) years old and therefore a member of a protected class.

60. Plaintiff was qualified to perform the job duties and responsibilities within Defendant's legitimate expectations.

61. The ADEA prohibits discrimination and/or harassment of a person because the individual is age 40 or older.

62. By the conduct described above, Defendant and its agents intentionally discriminated against Plaintiff in her employment because of her age, in violation of the Age Discrimination in Employment Act.

63. As a result of the unlawful and willful acts complained of herein, Plaintiff has suffered economic and non-economic damages, including but not limited to loss of wages, emotional distress, humiliation, anguish and outrage.

WHEREFORE, Plaintiff, JANE DOE, respectfully requests that this Court enter judgment in her favor and against Defendant PLANNED PARENTHOOD OF ILLINOIS as follows:

A. Declare, decree, and adjudge that the Defendant violated the ADEA;

B. Grant an injunction against the Defendant from violating the ADEA and to protect other job candidates over forty from such Civil Rights violations;

C. Enter appropriate injunctive relief awarding Plaintiff front pay, wages, employee benefits, and other compensation that she was denied or lost;

D. Order the Defendant to pay the Plaintiff compensatory damages;

E. Award the Plaintiff pre-judgment and post-judgment interest to which she is entitled;

F. Award the Plaintiff reasonable attorney's fees and costs; and

G. Award such other and further relief as it is just and appropriate, including nominal damages.

Dated: September 21, 2025

    /s    Antonio L. Jeffrey_____
          Attorney for Plaintiff

JEFFREY LAW OFFICE, LLC
Antonio L. Jeffrey (#6308345)
1301 W. 22nd Street, Suite 308
Oak Brook, Illinois 60523
(312) 583-7072
(312) 583-0888 (fax)
ajeffrey@jeffreylawoffice.com